## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                    CHAPTER 7 CASE

Thomas Ramon Marroquin                    CASE NO. 10-47401

                         Debtor(s).       NOTICE OF HEARING AND MOTION FOR
_____    RELIEF FROM STAY

TO:  Debtor and other entities specified in Local Rule 9013-3(a).

1.      U.S. Bank, N.A., its successors and/or assigns, (hereinafter "Movant"), by its undersigned attorney moves the Court for the relief requested below and gives notice of hearing herewith.

2.      The Court will hold a hearing on this motion on November 18, 2010, at 2:00 PM, or as soon thereafter as counsel can be heard, before the Honorable Judge Robert J. Kressel in Courtroom 8 West of the above entitled Court located at 300 S 4th St, Minneapolis MN, 55415-2255.

3.      Any response to this motion must be filed and served by delivery not later than November 12, 2010, which is five days before the time set for the hearing (including Saturdays, Sundays and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing this case was filed on October 01, 2010.  The case is now pending in this Court.

5.      This motion arises under 11 U.S.C. § 362 and Federal Rule of Bankruptcy Procedure 4001.  This motion is filed under Federal Rule of Bankruptcy Procedure 9014 and

Local Rules 9013-1 - 9019-1.  Movant requests relief from the automatic stay with respect to property subject to a lien.  Movant requests said relief be effective immediately notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3).

6.      Debtor is indebted to Movant in the original principal amount of $138884.00, as evidenced by that certain Promissory Note dated June 25, 2009, a copy of which is attached hereto as Exhibit "A", together with interest thereon.

7.      Debtor's indebtedness is secured by a mortgage on real estate in which Debtor has an interest as evidenced by that certain mortgage deed dated June 25, 2009, executed by Thomas R Marroquin, a single man, filed for record in the office of the County Registrar of Titles on July 07, 2009, as Document Number T4658536, Hennepin County, State of Minnesota, a copy of which is attached hereto as Exhibit "B".  The name and address of the original creditor is contained in the attached Exhibit "B".  Said mortgage was assigned to U.S. Bank National Association by that certain Corporation Assignment of Mortgage dated August 11, 2010 and registered on August 20, 2010 as Document Number T4780823.  A copy of the aforesaid Assignment(s) is attached hereto as Exhibit "C".  The property is located in Hennepin County, Minnesota and is legally described as follows to wit:

Lot 7, Block 1, Grand View Terrace.

Movant is now the holder of said mortgage and is entitled to enforce the terms thereof.

8.      At all times material, Debtor was in default of the payments and performance of obligations to Movant.

9.      Pursuant to 11 U.S.C. § 362(g) the burden is on Debtor to prove absence of cause and/or adequate protection.  This Movant's interest in the property is not adequately protected where, as of November 01, 2010, Debtor is delinquent for monthly payments as required for the

months of March 2010 to July 2010 in the amount of $1132.45 per month; August 2010 to November 2010 in the amount of $1119.42 per month; accruing monthly late charges; and attorney's fees and costs of $700.00. Debtor has failed to make any offer of adequate protection.

10.     Debtor has no equity in the property and the property is not necessary to an effective reorganization. The value of the property as scheduled by Debtor is $164,100.00, subject to Movant's mortgage in excess of $147,557.12. The property is also subject to a Junior Mortgage in favor of Regions Mortgage in excess of $34,000.00.

11.     Movant desires to protect its interest in the aforementioned property and requests the Court to vacate the stay of actions and allow foreclosure pursuant to Minnesota law.

12.     Movant has incurred and will incur legal fees and costs to protect and enforce its rights in the subject property.

WHEREFORE, Movant, by its undersigned attorney, moves the Court for an order for judgment that the automatic stay provided by 11 U.S.C. § 362(a) be terminated so to permit the Movant to commence mortgage foreclosure proceedings under Minnesota law and for such other relief as may be just and equitable.

Dated: November 1, 2010

**WILFORD & GESKE, P.A.**


/e/ James A. Geske
James A. Geske, #14969X
Attorneys for U.S. Bank, N.A., its successors
and/or assigns
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
(651) 209-3300


**THIS COMMUNICATION IS FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

MIN: 100611800000131617      Loan Number: ▉▉▉▉▉▉

# NOTE

FHA Case No.
277-0260254-703

JUNE 25, 2009      IRVINE      CALIFORNIA
[Date]          [City]          [State]

8741 11th Ave. S., Minneapolis, Minnesota 55420
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means NATIONS DIRECT MORTGAGE, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED THIRTY-EIGHT THOUSAND EIGHT HUNDRED EIGHTY-FOUR AND 00/100 Dollars (U.S. $ 138,884.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 000/1000 percent ( 6.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on AUGUST 1, 2009 . Any principal and interest remaining on the 1st day of JULY, 2039 , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 18200 VON KARMAN, SUITE 250, IRVINE, CALIFORNIA 92612 , or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 832.68 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 05/01/08      Page 1 of 3      DocMagic *eFarms* 800-649-1362
www.docmagic.com

EXHIBIT 

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of    FOUR AND 000/1000                        percent (     4.000 %) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)　　　　_____ (Seal)
Thomas R Marroquin　　　-Borrower　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　　_____ (Seal)
　　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　　-Borrower

PAY TO THE ORDER OF:
WITHOUT RECOURSE

NATIONS DIRECT MORTGAGE, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

BY: _____

ITS:

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 05/01/08　　　　　　　Page 3 of 3　　　　　　DocMagic *eForms* 800-649-1362
www.docmagic.com

**ALLONGE**                    (0069-35)

Loan Number: ████████
Case #: ████████
Loan Date: 06/25/2009
Borrower(s): Thomas R Marroquin

Property Address: 8741 11th Ave. S., Minneapolis MN 55420

Principle Balance: $138,884.00

**PAY TO THE ORDER OF**

*US Bank, NA*

**Without Recourse**

Company Name: **Nations Direct Mortgage, LLC**

By: _Kelly Moeller_      Post Closer
        Kelly Moeller          (Title)

Pay to the order of
_____

Without Recourse
U.S. Bank N.A.
_Teresa Bulver_
Teresa Bulver
Vice President

# MORTGAGE

| FHA CASE NO. |
|---|
| 277-0260254-703 |

**PLEASE RETURN ACKNOWLEDGMENT TO:**
CAPITOL LIEN RECORDS & RESEARCH, INC.,
MINNESOTA ABSTRACT & TITLE COMPANY,
1010 N. DALE ST. - ST. PAUL, MN 55117
PHONE: (651) 488-0100  (800) 845-4077
Visit us at www.capitollien.com.

Loan Number: ▮▮▮▮▮▮▮▮▮▮ - - - -
MIN: 100611800000131617

THIS MORTGAGE ("Security Instrument") is given on  JUNE 25, 2009
The mortgagor is  THOMAS R MARROQUIN  *a single man*

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.    NATIONS DIRECT MORTGAGE, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY                                                      ("Lender")
is organized and existing under the laws of  CALIFORNIA                                                     ,
and has an address of 18200 VON KARMAN, SUITE 250, IRVINE, CALIFORNIA
92612
Borrower owes Lender the principal sum of  ONE HUNDRED THIRTY-EIGHT THOUSAND
EIGHT HUNDRED EIGHTY-FOUR AND 00/100    Dollars (U.S. $ 138,884.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  JULY 1, 2039
and for interest at the yearly rate of  SIX AND 000/1000                              percent. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in
Hennepin                                        County, Minnesota:

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT 

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 1102724210020

which has the address of    8741 11th Ave. S.

[Street]

Minneapolis                              , Minnesota          55420          ("Property Address"):

[City]                                                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time

are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. **Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

DocMagic *eForms* 800-649-1362
www.docmagic.com

**21. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by applicable law.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider
☐ Planned Unit Development Rider ☐ Adjustable Rate Rider ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Thomas R Marroquin_ _____ (Seal)  _____ (Seal)
Thomas R Marroquin -Borrower -Borrower

_____ (Seal)  _____ (Seal)
-Borrower -Borrower

_____ (Seal)  _____ (Seal)
-Borrower -Borrower

Witness: Witness:

_____ _____

FHA MINNESOTA MORTGAGE - MERS
MNMTGZ.FHA 11/01/08 Page 7 of 8 DocMagic eForms 800-649-1362
www.docmagic.com

—————————————— [Space Below This Line For Acknowledgment] ——————————————

State of _MINNESOTA_

County of _HENNEPIN_

The instrument was acknowledged before me on _JUNE 25, 2009_

by _THOMAS R MARROQUIN , A SINGLE MAN_

CYNTHIA L. MCALLISTER
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2013

(Seal)

_____
Signature of notarial officer
CYNTHIA L. MCALLISTER
NOTARY PUBLIC
Title and Rank

My commission expires: _01/31/2013_

This instrument was drafted by:
_[handwritten]_
_Mortgage Connect for_
_Nations Direct_
_1800 Von Karman Suite 250_
_Irvine CA 92612_

Tax statements for the real property described in this instrument should be sent to:
NATIONS DIRECT MORTGAGE, LLC
18200 VON KARMAN, SUITE 250
IRVINE, CALIFORNIA 92612

DocMagic eForms 800-649-1362
www.docmagic.com

## EXHIBIT A

Real property in Hennepin County, Minnesota, described as follows:

Lot 7, Block 1, Grand View Terrace.

More commonly known as 8741 11th Avenue South, Minneapolis, MN 55420

Tax ID: 11-027-24-21-002

PLEASE RETURN ACKNOWLEDGMENT TO:

CAPITOL LIEN RECORDS & RESEARCH, INC.,
MINNESOTA ABSTRACT & TITLE COMPANY,
1010 N. DALE ST. -  ST. PAUL, MN 55117
PHONE: (651) 488-0180   (800) 845-4077

Visit us at www.capitollien.com.

SCANNED



Doc No **T4658536**

Certified, filed and/or recorded on
7/7/09 9:49 AM
Office of the Registrar of Titles
Hennepin County, Minnesota
Michael H. Cunniff, Registrar of Titles
Jill L. Alverson, County Auditor and Treasurer

Deputy 33                                    Pkg ID 548695

**Doc Name: Mortgage**

| | |
|---|---:|
| Document Recording Fee | $46.00 |
| Mortgage Registration Tax (.0023 rate) | $319.43 |
| Conservation Fee | $5.00 |
| Environmental (MRT) Response Fund | $13.89 |
| ***Document Total*** | **$384.32** |

**Existing Certs** ~~ ~~~~ ~~    **New Certs**

1032078 .

This cover sheet is now a permanent part of the recorded document.

## ASSIGNMENT OF MORTGAGE

## MORTGAGE DOCUMENT #T4658536 (T)

DRAFTED BY:
Wilford & Geske, P.A.
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
FILE NUMBER: 016474F01

# EXHIBIT __C__

## ASSIGNMENT OF MORTGAGE

FOR VALUABLE CONSIDERATION, Mortgage Electronic Registration Systems, Inc., a corporation under the laws of Delaware, does hereby sell, assign, transfer, and set over to U.S. Bank National Association, whose address is 800 Moreland St Owensboro, KY 42301-2046, its successors and assigns, that certain mortgage executed by Thomas R Marroquin, a single man, Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as Mortgagee, dated June 25, 2009, filed for record in the office of the County Registrar of Titles on July 07, 2009, as Document Number T4658536, Hennepin County, State of Minnesota, together with all right and interest in the land herein described and in the note and obligations therein specified, and to the debt thereby secured; and does hereby covenant with the assignee, its successors and assigns that it has good right to sell, assign and transfer the same.

Date: August 11, 2010

Mortgage Electronic Registration Systems, Inc.

By: _Kim Stewart_
Kim Stewart

Its: Assistant Secretary

STATE OF Kentucky   )
          )ss.
COUNTY OF Daviess  )

This instrument was acknowledged before me on August 11, 2010 by

Kim Stewart  as Assistant Secretary  for

Mortgage Electronic Registration Systems, Inc., a Delaware corporation, on behalf of the corporation.

_Paula G Martin_
Notary Public  410061

OFFICIAL SEAL
PAULA G. MARTIN
NOTARY PUBLIC—KENTUCKY
STATE-AT-LARGE
My Comm. Expires 12-13-2013



Doc No **T4780823**

Certified, filed and/or recorded on
8/20/10 4:30 PM
Office of the Registrar of Titles
Hennepin County, Minnesota
Michael H. Cunniff, Registrar of Titles
Jill L. Alverson, County Auditor and Treasurer

Deputy 13                                  Pkg ID 648930

**Doc Name: Assignment of Mortgage**

| | |
|---|---|
| Document Recording Fee | $46.00 |
| *Document Total* | $46.00 |

**Existing Certs**          **New Certs**

1032078

This cover sheet is now a permanent part of the recorded document.

In Re:                                              CHAPTER 7 CASE

Thomas Ramon Marroquin                              CASE NO. 10-47401

                         Debtor(s).                 MEMORANDUM IN SUPPORT OF
_____                     MOTION FOR RELIEF FROM STAY

ARGUMENT

**I.      CAUSE EXISTS FOR THE GRANTING OF RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) WHERE THE INTEREST OF THIS MOVANT IS NOT ADEQUATELY PROTECTED.**

Pursuant to 11 U.S.C. § 362(g) the burden is on Debtor to prove absence of cause and/or adequate protection.  Movant's interest in the property is not adequately protected where:

1.      As of November 01, 2010, Debtor is delinquent for monthly payments as required for the months of March 2010 to July 2010 in the amount of $1132.45 per month; August 2010 to November 2010 in the amount of $1119.42 per month; accruing monthly late charges; and attorney's fees and costs of $700.00.

2.      Debtor has failed to make any offer of adequate protection.

Furthermore, Debtor has failed to meet its contractual obligations to make payments as they become due after the filing of the bankruptcy petition, which failure constitutes "cause" entitling the Movant to relief from the automatic stay under 11 U.S.C. § 362(d)(1).  A continued failure by Debtor to maintain regular payments to Movant is sufficient cause to entitle Movant to relief from the automatic stay.  See In re Taylor, 151 B.R. 646 (E.D.N.Y., 1993) and In re Davis, 64 B.R. 358 (Bkrtcy. S.D.N.Y., 1986).

**II.     THE AUTOMATIC STAY SHOULD BE MODIFIED PURSUANT TO 11 U.S.C. § 362(d)(2) WHERE (1) DEBTOR DOES NOT HAVE ANY EQUITY IN THE PROPERTY, AND (2) THE PROPERTY IS NOT NECESSARY TO AN EFFECTIVE REORGANIZATION.**

The first requirement under § 362(d)(2) is met where the total of all the encumbrances against the property is in excess of the value of the property. The value of the property as scheduled by Debtor is $164,100.00, subject to Movant's mortgage in excess of $147,557.12. The property is also subject to a Junior Mortgage in favor of Regions Mortgage in excess of $34,000.00.

CONCLUSION

Movant is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) for cause, and where its interest in the secured property is not adequately protected. Movant is also entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) where Debtor has no equity in the property, and where the property is not necessary to an effective reorganization.

Movant respectfully requests an order of this Court modifying the automatic stay consistent with the attached proposed Order.

Dated: November 1, 2010

**WILFORD & GESKE, P.A.**

/e/ James A. Geske
James A. Geske, #14969X
Attorneys for U.S. Bank, N.A., its successors
and/or assigns
8425 Seasons Parkway, Suite 105
Woodbury, MN 55125-4393
(651) 209-3300

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          CHAPTER 7 CASE

Thomas Ramon Marroquin                          CASE NO. 10-47401

                    Debtor(s).                  AFFIDAVIT OF U.S. BANK, N.A., ITS
                                                SUCCESSORS AND/OR ASSIGNS

Olivia Todd, being first duly sworn on oath, deposes and states:

That I am President of National Default Servicing Corporation authorized outsourcing agent for U.S. Bank, N.A., its successors and/or assigns.

1.      That U.S. Bank, N.A., its successors and/or assigns, is now the holder of a mortgage on real property in which the debtor has an interest. The debtor's indebtedness is evidenced by that certain mortgage deed dated June 25, 2009, executed by Thomas R Marroquin, a single man, recorded on July 7, 2009, as Document No. T4658536, covering real estate located in Hennepin County, Minnesota, legally described as follows, to wit:

Lot 7, Block 1, Grand View Terrace.

and commonly known as 8741 11th Ave S, Bloomington, MN 55420

2.      That I have reviewed the account records relating to the debtor's mortgage loan, account no. ending in 3252.

3.      That as of October 22, 2010, the following amounts were owing on this account:

| | |
|---|---|
| Unpaid Principal Balance | $137,901.54 |
| Interest through October 22, 2010 | $6,205.59 |
| Attorney Fees and Costs | $700.00 |
| Late Charges | $90.60 |
| Negative Escrow Balance | $728.71 |
| Property Inspections | $80.00 |
| Mortgage Insurance Payments | $111.68 |
| Recoverable Balance | $1,739.00 |
| TOTAL: | $147,557.12 |

4.      That the mortgage loan is delinquent for monthly payments as required for the months of March 2010 to July 2010 in the amount of $1132.45 per month; August 2010 to October 2010 in the amount of $1119.42 per month; and accruing monthly late charges. Attached is a complete loan history beginning on the date of default and continuing through the month of October 2010.

5. The current tax-assessed value of the property and the Movant's estimated current market value is $164,100.00, subject to the Movant's mortgage in excess of $147,557.12. According to the debtor's schedules, the property is also subject to a Junior Mortgage in favor of Regions Mortgage in excess of $34,000.00.

6. This affidavit is given in support of the motion of U.S. Bank, N.A., its successors and/or assigns for relief from the automatic stay.

National Default Servicing Corporation authorized outsourcing agent for U.S. Bank, N.A., its successors and/or assigns.

By _____

Its President

Subscribed and sworn to before me on October 27, 2010.

_____
Notary Public

Pamela Cardy
Notary Public - Arizona
MARICOPA COUNTY
My Commission Expires
JUNE 8, 2011

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|---|---|---|---|---|---|---|
| 3/1/2010 | | $832.68 | $299.77 | | | |
| 4/1/2010 | | $832.68 | $299.77 | | $20.00 | Property Inspection Fee |
| 5/1/2010 | | $832.68 | $299.77 | | $20.00 | Property Inspection Fee |
| 6/1/2010 | | $832.68 | $299.77 | $45.30 | $20.00 | Property Inspection Fee |
| 7/1/2010 | | $832.68 | $299.77 | $45.30 | $20.00 | Property Inspection Fee |
| 8/1/2010 | | $832.68 | $286.74 | | | |
| 9/1/2010 | | $832.68 | $286.74 | | | |
| 10/1/2010 | | $832.68 | $286.74 | | | |
| 11/1/2010 | | $832.68 | $286.74 | | | |
| | | | | | | |
| | | | | | | |
| TOTALS | $0.00 | $7,494.12 | $2,645.81 | $90.60 | $80.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.)

**NOTE: Columns (b) + (c)+ (d)+(e) -(a) must equal the current amount that is claimed in the motion**

| | |
|---|---|
| Attorneys fees and filing fee for the motion, if allowed under note and/or mortgage and | $700.00 |
| Current Default Amount Claimed in the Motion | $10,310.53 |
| Escrow Balance (amount held for payment of taxes, insurance, etc) | ($728.71) |
| Suspense Account Balance (amount of unapplied payments) | $0.00 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:                                      CHAPTER 7 CASE

Thomas Ramon Marroquin                      CASE NO. 10-47401

                Debtor(s).          UNSWORN DECLARATION FOR PROOF
_____        OF SERVICE

      Maria Boelen, employed by Wilford & Geske, P.A., attorneys licensed to practice law in this Court, with office address at 8425 Seasons Parkway, Suite 105, Woodbury, MN 55125-4393, declares that on November 01, 2010, I served the annexed Notice of Hearing and Motion for Relief from Stay, Memorandum in Support of Motion for Relief from Stay, Affidavit of Olivia Todd, and proposed Order to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing same in the post office at Woodbury, Minnesota addressed to each of them as follows:

Thomas Ramon Marroquin
8741 11th Ave S
Bloomington, MN 55420-3051

Regions Mortgage
PO Box 18001
Hattiesburg, MS 39404-8001

and delivered by e mail notification under CM/ECF on the day efiled with the Court to each of them as follows:

Curtis  K. Walker

Brian  Leonard

U.S.Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: November 01, 2010

                              /e/ Maria Boelen                   
                              Maria Boelen

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:                                          CHAPTER 7 CASE

Thomas Ramon Marroquin                          CASE NO. 10-47401

                    Debtor.                     ORDER
_____

       This case came before the court on the motion of U.S. Bank, N.A., seeking relief from the

automatic stay imposed by 11 U.S.C. § 362.  Based on the motion and the file,

IT IS ORDERED:

       1.      That movant, its assignees and successors in interest, are granted relief from the

automatic stay imposed by 11 U.S.C. § 362 with regard to the mortgage deed dated June 25,

2009, executed by Thomas R Marroquin, a single man, recorded on July 7, 2009, as Document

No. T4658536, covering real estate located in Hennepin County, Minnesota, legally described as:

       Lot 7, Block 1, Grand View Terrace.

and may pursue its remedies under state law in connection with the mortgage deed.

       2.      Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:

                                  _____
                                  United States Bankruptcy Judge